IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AHMAD BISHAWI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | )   NO. CV 02-958-PMF |
| | ) |
| GRW CORPORATION (Tri-County | ) |
| Detention Center); MIKE STANBERRY, | ) |
| (Jail Administrator); FLOYD WOODSON, | ) |
| (Captain); CHARLES EVERS (Sergeant); | ) |
| and ROD LACY, (Assistant Jail | ) |
| Administrator); | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**FRAZIER, Magistrate Judge:**

This matter is before the Court following a bench trial. Plaintiff is a federal inmate incarcerated at the Federal Correctional Institution in Youngstown, Ohio. He did not attend the trial because there was no way to secure his presence. His appointed counsel, Philip Lading,[1] submitted plaintiff's deposition, taken March 9, 2007, pursuant to Fed. R. Civ. P. 32. Findings of fact and conclusions of law follow.

FINDINGS OF FACT[2]

---

[1] This is an appropriate place to commend Mr. Lading's efforts as appointed counsel. He accepted this pro bono appointment without quibble and on short notice to prepare for trial. Plaintiff's case was very well presented. The Court again thanks Mr. Lading for his service.

[2] This is intended to be a concise and brief account of the bench trial conducted March 29, 2007. To that end, only matters deemed to be credible, material, and relevant will be reported. The reader may presume that any evidence which does not appear either lacked one or more of those qualities or was duplicative.

Plaintiff is a federal inmate housed at FCI Youngstown, Ohio. He has been convicted of three felonies for drug and immigration offenses. On September 12, 2000, he was housed at the Tri-County Detention Center (Tri-County) in Ullin, Illinois. Tri-County is owned by defendant GRW, Inc. It contracts with Pulaski County and federal entities to keep their prisoners. Officers employed at Tri-County all receive IDOC approved training. They have the ability to use appropriate force in appropriate circumstances. Inmates at Tri-County receive a handbook upon entering the facility. Plaintiff, in particular, received a handbook.

Plaintiff resided in "Pod A." Inmates there live more as a group rather than being locked into individual cells. Pod A contained a pay telephone which could be used to make collect calls. Certain types of calls, such as to ones attorney, could be made from another phone, but prior approval was required. Inmates making such calls would be picked up at a door to the Pod and escorted in handcuffs. When the door to the Pod was opened to permit an inmate to be escorted, it was the rule that no other inmates were permitted to block it. A request from an officer to back away from the open door must be obeyed to avoid discipline.

Plaintiff arrived at Tri-County on August 21, 2000. From the time he arrived, he sought after and anticipated a transfer. To help achieve that result, plaintiff made many requests for writing materials to communicate with his attorney. By September 12, 2000, plaintiff's patience was growing thin. He had made a request the day before for information concerning the transfer and had not received a satisfactory answer. Defendant Evers, a sergeant at the facility, arrived at Pod A that day to escort another inmate off the Pod. He was met by plaintiff who insisted on some answers concerning his transfer. Evers told plaintiff that he was busy and that he would have to wait. Plaintiff then insisted to see a supervisor, Lt. Sadler. Evers again instructed plaintiff, who was

2

blocking the Pod door, to move back into the Pod so that the door could close. Plaintiff refused. At this point, Evers decided that plaintiff needed some guidance, and he put his hand on plaintiff to encourage the desired movement. Plaintiff was, by then, agitated. Evers again requested plaintiff to move, and plaintiff responded, "I'm not going anywhere." Plaintiff then either attempted to head-butt Evers in the chest or made other furtive moves that caused Evers to take action. In his own words, Evers "went to the floor" with plaintiff. Plaintiff continued to resist. Two other officers joined the fray. Evers put his knee in plaintiff's back while the other two held his legs and eventually put him in restraints.

Plaintiff claims that defendant wore steel-toed boots which he used to kick his leg. Evers testified that steel-toed boots were prohibited in the facility and that he did not own a pair. No medical evidence supports plaintiff's claim that he was kicked. Another inmate, Ahmad, claims to have observed some discoloration on plaintiff's skin. Other correctional officers, including Evers, testified that they observed no cuts, bruises, or other objectively determinable signs of injury. Plaintiff was evaluated by a nurse, and no further medical attention was required or given. Plaintiff testified that he suffers pain to this day. That claim lacks medical support, logic, and credibility.

Plaintiff offered no evidence concerning defendants Stanberry, Woodson, and Lacy other than their presence at the facility that day. He offered no evidence at all concerning defendants, John Doe #1 (Assistant Jail Administrator, Lacy) and John Doe #2 (Sergeant Everts), who were named in his original Complaint but omitted from his Amended Complaint. Lacy was the assistant administrator and has no personal knowledge of the incident in Pod A or plaintiff's physical condition before or after September 12, 2000. Woodson was a captain at Tri-County. He has no personal knowledge of anything claimed by plaintiff. There was no evidence that Stanberry did or

failed to do anything that would support liability in favor of plaintiff.

Plaintiff was transferred the next day. There is no evidence that he has received or requested medical treatment at any other facility for injuries he claims to have received September 12, 2000.

## CONCLUSIONS OF LAW

This Court has jurisdiction pursuant to 42 U.S.C. § 1343. Venue is proper in this district.

Plaintiff must prove the following by a preponderance of the evidence: the conduct in issue must have been taken under color of state law; and, the conduct must have deprived plaintiff or rights, privileges or immunities guaranteed by the Constitution or laws of the United States. *Larsen v. Beloit*, 130 F.3d 1278, 1282 (7th Cir. 1997). In a prison setting, the unnecessary and wanton infliction of pain amounts to cruel and unusual punishment and violates the 8th Amendment. When prison employees deal with disruption, they must balance the need to restore order and discipline against the harm an inmate may suffer if force is used. *Hudson v. McMillian*, 501 U.S. 1 (1992). Liability results only if the force is applied maliciously or sadistically for the very purpose of causing harm. *Id*. The Court must consider all underlying circumstances, including the need for force, the relationship between that need and the amount of forced used, the threat reasonably perceived by Evers, whether any effort was made to temper the severity of a forceful response, and the severity of injury inflicted on plaintiff. *Id*

Evers was confronted with a prisoner who was agitated and by his own admission refused a direct order, that being to move away from the open door. Evers was reasonable in making that demand. He needed to secure the area so that he could move another inmate. Plaintiff's obstinacy crossed the line and became a threat to the orderly running of the institution. When he became aggressive after Evers tried to guide him away from the door, Evers was justified in using reasonable

4

force.  There is no credible evidence showing that plaintiff sustained any real harm or injury, much less harm which was gratuitously inflicted.  The force used was reasonable and well-calculated to restore order.  Plaintiff loses this claim.

Plaintiff's next claim is one for common law assault.  A person commits assault when, without lawful authority, he places another in reasonable apprehension of receiving a battery.  *Kraushaar v. Flanigan*, 45 F.ed 1040, 1050 (7th Cir. 1995), 720 ILCS 5/12-1.  Evers had lawful authority to do everything that plaintiff claims.  Plaintiff loses this claim.

Plaintiff has generally alleged negligence.  The elements of negligence — duty, breach of duty, and injury proximately caused by the breach — are axiomatic and need no further legal reference.  It is unnecessary to get into Tort Immunity, which was not alleged in any event.  This is because plaintiff failed to prove any of the essential elements.

Plaintiff's final claim is, at least, very creative.  He alleges that he is a third-party beneficiary of defendant GRW's contract with Pulaski County, Illinois, and that he is entitled to damages for defendant's breach of that contract.  In Illinois, a third party has no rights to damages from breach of a contract entered into by others unless the agreed-to provision was intentionally included for direct benefit of the third party.  *Estate of Willis v. Kiferbaum Construction Corp.,* 830 N.E.2d 636, 643 (Ill. App. 2005).  Illinois law holds a strong presumption against creating contract rights in third parties.  Plaintiff must show language and circumstances of the contract in question which manifest an affirmative intent to benefit a third party — namely, plaintiff.  Obviously, plaintiff's proof has fallen woefully short of this very high mark.  There simply is no evidence which would support this claim, and plaintiff loses it as well.

For all the foregoing reasons, the clerk is directed to enter judgment against plaintiff and in

favor of all defendants, GRW Corporation (Tri-County Detention Center); Mike Stanberry (Jail Administrator); Rod Lacy (Assistant Jail Administrator); Floyd Woodson (Captain); and Charles Evers (Sergeant); on all counts in the Amended Complaint.

**DATED:  April 27, 2007.**

*s/Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**
